UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEAN BURG,

                Plaintiff,

       v.

PRIMAL VANTAGE COMPANY, INC.,
DICK'S SPORTING GOODS, INC., and
DICK'S SPORTING GOODS,

                Defendants.

**REPORT AND RECOMMENDATION**

13-CV-1121S

---

## I. INTRODUCTION

Chief Judge Skretny referred this case to this Court under 28 U.S.C. § 636(b). Pending before the Court is a motion (Dkt. No. 8) by plaintiff Dean Burg ("Burg") to remand this case to New York State Supreme Court, Erie County. Burg began this case by filing a summons and complaint in state court on October 8, 2013; the complaint contained five causes of action related to products liability. Defendants Primal Vantage Company, Inc., Dick's Sporting Goods, Inc., and Dick's Sporting Goods ("Primal" collectively) filed a notice of removal (Dkt. No. 1) on November 14, 2013, asserting the diversity of citizenship and amount in controversy necessary for diversity jurisdiction under 28 U.S.C. § 1332. The pending motion followed.

Upon referral of the case and the pending motion, the Court issued a schedule (Dkt. No. 9) that required responding papers from Primal by December 23, 2013, required reply papers from Burg by January 13, 2014, and set oral argument for January 22, 2014. Primal, represented by two law firms, received electronic notice of that schedule through each law firm of record. The deadline for responding papers came and went without any filing from Primal. Accordingly, on January 16, 2014 the Court canceled oral argument and deemed the motion submitted. (Dkt. No. 12.) Through the time of this writing, the Court has not received any communication from the parties through filings on the docket or informally through contact with chambers.

Although, as explained below, the lack of opposition to the motion is relevant in some respects, it does not mean automatic granting of the motion. The motion is dispositive in nature, and the Court had to consider the underlying merits anyway. *See Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008) (finding a motion to remand dispositive and "indistinguishable from a motion to dismiss the action from federal court based on a lack of subject matter jurisdiction for the purpose of [28 U.S.C.] § 636(b)(1)(A)"); *cf. McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000) (requiring a Rule 12(b)(6) motion to be assessed on the merits even if unopposed); *see also Archilla v. Davila*, No. EP-07-CA-0038-FM, 2007 WL 1876537, at *1 n.1 (W.D. Tex. June 26, 2007) ("Although Plaintiff has not responded to Defendant's Motion, the Court will consider the Motion on its

merits under Federal Rule of Civil Procedure 12(b)(1) rather than automatically granting the Motion as unopposed.") (citations omitted). Now having considered the merits, the Court respectfully recommends granting the motion.

## II. BACKGROUND

This case concerns allegations that Primal designed and manufactured a defective tree stand that injured Burg while hunting. According to the record, Burg bought a Primal Vantage 2007 Ladder Tree Stand in September 2007 at Dick's Sporting Goods. Burg did not keep the instructions for the tree stand, and his history of use for the first two years after buying it are unknown. Nonetheless, Burg alleges that he went to his brother's property in Lockport, New York on October 8, 2010 to hunt deer. At the time, Burg was 47 years old and stood six feet tall, 220 pounds. Burg was assembling the stand at a tree while standing on the ladder assembly that came with the stand. An unspecified metal part of the ladder bent and broke while Burg was standing on it, causing him to fall about 10 feet to the ground.

Medical records accompanying the pending motion document the progress that Burg made in recovering from his injuries. An examination on October 11, 2010—just a few days after the alleged accident—led to a diagnosis of a nondisplaced right proximal fibular fracture just below the fibular head. The examining medical professional described the fracture as a "stable injury" that he would treat conservatively. (Dkt. No. 8-2 at 2.) The treatment plan consisted of

using a walker boot, anti–inflammatory medication, and ice. A follow-up examination on November 2, 2010 revealed that Burg was "feeling much better" with "much less discomfort." (*Id.* at 3.) The reviewing physician agreed with continuing conservative treatment and following up later. At a follow-up examination on December 2, 2010, Burg again reported feeling better and having less discomfort. (*Id.* at 4.) By that time, the healing at Burg's fibular neck was visible by x-ray, and Burg had full range of motion at the knee. The reviewing physician agreed with a final check in six weeks.

Before resorting to litigation, Burg's counsel sent Primal's counsel a letter dated March 28, 2013 "for the purpose of exploring the settlement of my client's claims against your client without the significant time and expense of protracted litigation." (Dkt. No. 8-3 at 2.) The settlement demand letter recited the events of the alleged accident and Burg's likely theories of liability. The letter also summarized the three evaluations noted above but then included the following language under headings titled "Limitations" and "Conclusion":

> Mr. Burg's daily activities were extremely limited as a result of his injuries sustained in this fall. The limitations in his right knee and leg made daily tasks challenging. Normal customary daily activities were performed on a limited basis but with pain as are recreational and/or social activities. As the records indicate, Dr. Parentis took Mr. Burg out of work for the first three (3) weeks following this accident where he used some sick and vacation time to supplement his income.
> The injuries sustained by Dean Burg as a result of the fall on October 8, 2010 were severe and he continues to experience pain in his right knee and right leg today. I think you would agree that overall

> Mr. Burg had a very good recovery and was able to have limited medical treatment for this fracture. However, he still underwent significant pain and treatment as a result of the tree stand collapsing. Based upon the above information and the attached documentation, my client's demand for settlement purposes only at this time is $125,000.00.

(*Id.* at 5.)  Primal's counsel never responded to Burg's settlement demand letter.

Burg began litigating when he filed a summons and complaint in state court on October 8, 2013. The complaint (Dkt. No. 1-1) states the basic facts of the accident from three years earlier and contains five causes of action for negligence, failure to warn, strict liability, and breach of implied warranties. Contrary to the information that seems to constitute his medical records, Burg included the following language in his complaint:

> 1. Burg "suffered severe and serious injuries and was rendered sick, sore, lame and disabled and so remains, having suffered, among other things: severe right leg and knee pain; laceration on left side of forehead; closed fracture of right upper end of fibula; mental anguish; pain and suffering. All of the aforementioned injuries are debilitating and disabling in nature and are of a nature which the Plaintiff, DEAN BURG, has suffered and will continue to suffer from for the remainder of his life. All of these injuries have resulted in grievous pain and suffering, have required and will in the future require medical intervention and are believed to be permanent in nature." (Dkt. No. 1-1 at 6.)
>
> 2. "As a result of the failures of the Defendants, the Plaintiff, DEAN BURG, has suffered and continues to suffer both physically and mentally . . . ." (*Id.* at 8, 9, 10, 11.)

Pursuant to N.Y. CPLR 3017(c), Burg's complaint did not include a demand for a specific amount of damages.[1]

On November 14, 2013, Primal removed this case to federal court by filing a notice of removal.  In the notice of removal, Primal asserted diversity of citizenship as Burg himself acknowledged in the complaint.  Primal also asserted in summary fashion that the amount in controversy in this case exceeds $75,000.  Primal did not cite any basis for this assertion; it made no mention of the settlement demand letter and stated in one sentence that Burg "fractured his right leg and sustained other injuries."  (Dkt. No. 1 at 3.)  There is no evidence that defendant ever requested a supplemental demand, pursuant to CPLR 3017(c), setting forth total damages sought.[2]

Burg filed the pending motion to remand on December 3, 2013.  Despite the language from the settlement demand letter and the complaint that the Court

---

[1] "In an action to recover damages for personal injuries or wrongful death, the complaint, counterclaim, cross-claim, interpleader complaint, and third-party complaint shall contain a prayer for general relief but shall not state the amount of damages to which the pleader deems himself entitled.  If the action is brought in the supreme court, the pleading shall also state whether or not the amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction."  CPLR 3017(c).

[2] "[A] party against whom an action to recover damages for personal injuries or wrongful death is brought, may at any time request a supplemental demand setting forth the total damages to which the pleader deems himself entitled.  A supplemental demand shall be provided by the party bringing the action within fifteen days of the request."  CPLR 3017(c).

quoted above, Burg's counsel now claims, in a sworn affidavit accompanying the motion, that "it is quite apparent from the pleadings and from the Plaintiff's own medical records that the amount in controversy does not exceed $75,000.00." (Dkt. No. 8 at 4.)  Burg's counsel then mentions the settlement demand letter, which he attached to the motion papers, and argues that "this was an opening demand made by the Plaintiff to begin negotiations but the Plaintiff was certainly willing to negotiate and decrease his settlement demand once an offer was made by the Defendants.  The Defendants never responded to this demand package and never responded with any offer and therefore, the Plaintiff was unable to reduce his demand accordingly.  Nonetheless, the Plaintiff does stipulate that the eventual settlement or even jury award of any kind in this matter would not exceed $75,000.00 given his injuries and his medical treatment."  (*Id.* at 5.)

As mentioned above, Primal never responded to the pending motion despite receiving notice of the Court's schedule for doing so.

## III. DISCUSSION

"A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of

7

establishing that removal is proper." *United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (citations omitted). More specifically, in disputes over the amount in controversy, "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (citation omitted). "Courts are directed to strictly construe removal statutes, and resolve any ambiguity in favor of remand to state court." *Levine v. Capital One Bank*, No. 10 Civ. 0241, 2010 WL 335597, at *1 (E.D.N.Y. Jan. 27, 2010) (citation omitted).

How do courts determine what the amount in controversy is in any given case removed from state court? First, courts look at the pleadings to see what amounts the plaintiffs themselves have claimed. "If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy . . . ." 28 U.S.C. § 1446(c)(2); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.") (citations

8

omitted). "However, if the pleadings are inconclusive, then the courts may look to documents outside the pleadings to other evidence in the record to determine the amount in controversy." *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010) (citation omitted). Here, the analysis cannot stop with any assertions from Burg, because CPLR 3017(c) prohibited Burg from stating an amount in his complaint and because Primal never served a request for a supplemental demand under that statute. The Court will have to take another step.

An amendment to the removal statute in 2012 gives courts more flexibility to determine an amount in controversy when plaintiffs have not stated an amount directly. As Section 1446 reads now, "the notice of removal may assert the amount in controversy if the initial pleading seeks . . . a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and . . . removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2). This added flexibility dovetails with an older rule that "if the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court."

*Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994); *see also* 28 U.S.C. § 1446(a) (requiring a notice of removal to contain "a short and plain statement of the grounds for removal").  A review of the available evidence generally means the evidence available at the time of removal.  *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56–57 (2d Cir. 2006) ("We generally evaluate jurisdictional facts, such as the amount in controversy, on the basis of the pleadings, viewed at the time when defendant files the notice of removal.") (citation omitted).

  Here, several factors stand out when reviewing the record and the available evidence.  Other than one sentence mentioning that Burg "fractured his right leg and sustained other injuries" in a product liability case (Dkt. No. 1 at 3) the notice of removal contains no information that helps the Court determine what the amount in controversy might be.  The information that best supports Primal's removal ironically comes from the pre-suit settlement demand letter that Burg himself provided in his motion papers.  The settlement demand letter demanded $125,000 and seems to accentuate Burg's injuries and the limitation on his daily activities.  The Court, however, hesitates to give the settlement demand letter any significant weight for several reasons.  First, the medical records that Burg attached to his motion papers indicate that he largely recovered within a few months of the accident and that the settlement demand letter may have contained some hyperbole.  The conflict between the medical records and the settlement

demand letter leads to a broader problem with pre-suit settlement demand letters. Pre-suit settlement demand letters can be unreliable as a gauge of an amount in controversy because, coming before any suit and thus before any "controversy," they may contain any number of motives and negotiating tactics that have nothing to do with assessing the value of a formally pled case. Pre-suit settlement demand letters, having been written before any litigation occurs, also are not subject to the requirements of Rules 8, 11, or 26 of the Federal Rules of Civil Procedure, requirements that generally curtail gamesmanship in disclosure and in litigation documents. Consequently, "[a] settlement offer should not necessarily be determinative of the amount in controversy. Instead, the Court agrees with those courts that have held that a settlement letter is only one factor to consider in assessing the amount in controversy and that courts must consider the context in which such a settlement demand was made. Courts should be alert to the fact that settlement offers can often be wildly unrealistic and constitute mere puffery or posturing rather than a fair or realistic appraisal of a party's damages." *Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 202–03 (D. Conn. 2004) (citations omitted); *accord Ramage v. Elite Carriers, LLC*, No. 12–CV–6395, 2012 WL 3581192, at *1 (W.D.N.Y. Aug. 17, 2012) (Telesca, *J.*) ("The Court finds that this 'pre-suit' settlement demand, without more, does not establish the amount in controversy to a reasonable probability, particularly considering that the demand was made prior to the filing of a law suit and could

represent mere posturing on the part of the plaintiff to avoid filing a lawsuit."). The court in *Boeck v. Pac. Cycle, Inc.*, No. 10–CV–667A, 2011 WL 98493 (W.D.N.Y. Jan. 12, 2011) (Arcara, *J.*) hinted at this kind of skepticism even though that case occurred before the 2012 statutory amendment and even though the timeliness of removal was the bigger issue.  This is not to say that settlement demand letters never have been considered.  *See, e.g., Feldman v. Edwab*, No. 1:10–CV–0261 (LEK/RFT), 2011 WL 1298717, at *3 (N.D.N.Y. Mar. 31, 2011) (collecting cases).  In fact, *Butera v. Sw. Airlines Co.*, No. 12–CV–51–A, 2012 WL 3860802 (W.D.N.Y. Sept. 5, 2012) (Arcara, *J.*) may have presented a sufficiently simplified scenario to allow for reliance solely on a settlement demand letter.[3]  Absent strong indicia of reliability, however, skepticism of pre-suit settlement demand letters appears to be the better practice. This skepticism also helps avoid a chilling effect on attorneys who want to negotiate freely before litigation without having to worry about affecting the record of a case that does not yet exist.

---

[3] For reasons that perhaps were warranted from the record, *Butera* also appears to have read *Luo* narrowly to mean that "the time of removal" equates to the moment when removal papers are filed.  In fact, "[t]he district court held an initial status conference with the parties [after removal], and plaintiff declined to limit her damages [to] $75,000 or less.  Shortly after that conference, Luo's counsel told defense counsel that Luo's demand was $600,000." *Luo*, 625 F.3d at 775–76.  Only then was the amount in controversy considered to exceed $75,000.

The last factor from the record that draws the Court's attention is Burg's counsel's statement, in his sworn affidavit attached to the motion papers, that the settlement demand letter "was an opening demand made by the Plaintiff to begin negotiations but the Plaintiff was certainly willing to negotiate and decrease his settlement demand once an offer was made by the Defendants.  The Defendants never responded to this demand package and never responded with any offer and therefore, the Plaintiff was unable to reduce his demand accordingly. Nonetheless, the Plaintiff does stipulate that the eventual settlement or even jury award of any kind in this matter would not exceed $75,000.00 given his injuries and his medical treatment."  (Dkt. No. 8 at 5.)  "[A] district court may allow a plaintiff to 'clarify' his or her complaint after removal in order to assist the court in evaluating the jurisdictional facts existing at the time of removal, if the complaint was ambiguous or silent as to the precise amount in controversy.  Post-removal clarifications by stipulation would be especially useful if the state court complaint was governed by state rules of civil procedure that preclude plaintiffs from alleging sum certain damages . . . . Consideration of a 'clarifying' stipulation is in conformity with the fundamental principle of removal jurisdiction that subject matter jurisdiction is determined at the time the removal petition was filed." *In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789(JFK), 2013 WL 603187, at *2–3 (S.D.N.Y. Feb. 14, 2013) (citations omitted).  *See also Massaro v. Pitts*, No. 10–CV–0911(JS)(WDW), 2011 WL 5825139, at *1 (E.D.N.Y. Nov. 15, 2011)

13

("The court may rely on affidavits and other evidence to determine the amount in controversy.") (citation omitted); *accord United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 306 (2d Cir. 1994) ("Clearly, had the Union challenged the amount in controversy in the traditional manner available to it in the district court, *i.e.*, had the Union filed a timely motion to remand pursuant to 28 U.S.C. § 1447(c), the parties, under the direction of the district court, would have had an opportunity to supplement the record to allow for an informed decision on the issue. It is only fair, therefore, that the issue be remanded to the district court to allow the parties to submit evidence on the amount in controversy and to give defendants an opportunity to meet their burden as to this requirement of diversity jurisdiction as well.") (citations omitted). Burg's counsel offered the stipulation about damages in a sworn affidavit filed less than a month after removal, with no other proceedings having occurred in the case. The stipulation is consistent with the medical records suggesting that Burg largely has recovered from his injuries, reducing the chance that it is mere posturing. By failing to respond to the motion, Primal contests neither Burg's offer to stipulate nor his description of his current medical status. Under these circumstances, the Court is willing to accept the stipulation, though Burg must understand that judicial estoppel now prohibits him from seeking $75,000 or more in state court under any circumstances, and that this Court will take a dim view of any attempt around that limit that returns the case to this forum.

In sum, after careful consideration of the record, the Court finds that a preponderance of the evidence weighs in favor of Burg's assertion that the amount in controversy in this case did not meet or exceed $75,000 at the time of removal. The Court thus lacks diversity jurisdiction and must return the case to state court.

## IV.  CONCLUSION

For all of the above reasons, the Court respectfully recommends granting Burg's motion to remand (Dkt. No. 8) and remanding this case to New York State Supreme Court, Erie County.

## V.  OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days. See 28 U.S.C. § 636(b)(1); FRCP 72. "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

SO ORDERED.

 /s Hugh B. Scott 
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: February 4, 2014

15